UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Rail World Locomotive Leasing, LLC,** | )<br>)<br>) |
| Plaintiff and Counterclaim Defendant, | )<br>) |
| v. | )<br>) Civil Action No. 16-11541 |
| **Massachusetts Bay Transportation Authority,** | )<br>) |
| Defendant and Counterclaim Plaintiff. | )<br>) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                         May 9, 2017

### I.      Introduction

Plaintiff and Counterclaim Defendant Rail World Locomotive Leasing, LLC ("Rail World") has filed this lawsuit against Defendant and Counterclaim Plaintiff Massachusetts Bay Transportation Authority (the "MBTA"), alleging breach of contract, unjust enrichment and quantum meruit. D. 1. The MBTA has filed counterclaims against Rail World, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, conversion and promissory estoppel and also seeks a declaratory judgment. D. 17 at 13-17. Rail World now moves to dismiss the MBTA's counterclaims. D. 26. For the reasons stated below, the Court GRANTS in part and DENIES in part Rail World's motion, D. 26.

### II.     Standard of Review

The Court will grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss if a counterclaim fails to plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court is obligated to

1

"assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). The Court, however, must distinguish "the [counterclaim's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). "[N]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations . . . make the claim as a whole at least plausible." Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14-15 (1st Cir. 2011)).

### III. Factual Background

Unless otherwise cited, the following summary is based upon the factual allegations in the MBTA's counterclaims, D. 17, which the Court must accept as true for the purposes of Rail World's motion to dismiss.

On or about February 23, 2015, the MBTA and Rail World entered into a Railroad Locomotive Lease Agreement (the "Lease" or "Lease Agreement"). D. 17 at 10 ¶ 9; see D. 26-1. Per the terms of the Lease, the MBTA agreed to lease seven locomotives from Rail World, each for one calendar year beginning on the date the MBTA accepted the locomotive. D. 17 at 10 ¶¶ 10-12. In exchange, the Lease obligated the MBTA to make quarterly rental payments, id. at 10 ¶ 13, in addition to paying Rail World an advance deposit of $204,750 to secure the locomotives pursuant to Section 7 of the Lease, id. at 11 ¶ 17. The MBTA alleges that it not only paid the advance deposit in or about February 2015, id. at 11 ¶ 18, but it also paid all rental payments due to Rail World under the Lease, id. at 10 ¶ 15.

Section 14 of the Lease allowed Rail World to "at any time assign its rights and obligations hereunder to any of the [l]ocomotives" such that the "assignee shall have, to the extent provided in the assignment, the rights, powers, privileges and remedies of [the] Lessor hereunder." D. 26-1 at 7. Section 14 additionally required, however, that the Lessor "provide or cause to be provided to Lessee written notification ten (10) days prior to any such assignment." Id. Pursuant to Section 14 of the Lease, Rail World assigned the Lease to Rail Transportation Services Corporation ("RTSC") to the extent provided in the assignment agreement between Rail World and RTSC in a purchase and sale agreement to which the MBTA was not a party on or about August 2015. D. 17 at 11 ¶¶ 20-21. The MBTA alleges that it did not receive written notification from Rail World ten days prior to the assignment. Id. at 11 ¶ 22.

After the assignment, Rail World issued an invoice to the MBTA, "Invoice Number 744," seeking payment in the amount of $421,694.33. D. 1-2 at 2; D. 17 at 12 ¶ 28. Thereafter, the MBTA paid Rail World $189,435.44 in connection with Invoice Number 744. D. 17 at 13 ¶ 33. In addition, Rail World issued two credit memoranda to the MBTA, which reduced the amount allegedly due first by $6,732.00 and then by $14,634.90. Id. at 12 ¶¶ 30-31. The MTBA alleges that it is further entitled to a reduction of $6,141.99 due to erroneous charges in Invoice Number 744. Id. at 12 ¶ 32. Taken together, the remaining amount allegedly due to Rail World is $204,750, which is the exact amount of the advance deposit that the MBTA provided to Rail World at the start of the Lease. Id. at 11-13 ¶¶ 17-18, 28-33.

Because Rail World retained the advance deposit in lieu of transferring the deposit to RTSC, id. at 11 ¶¶ 23-24, and the term of the Lease for each locomotive has ended, id. at 11 ¶ 25, the MBTA now asserts that Rail World has improperly failed to credit, refund or pay the advanced deposit to the MBTA, id. at 12 ¶ 26.

3

## IV. Procedural History

On July 26, 2016, Rail World instituted this action against the MBTA. D. 1. On September 30, 2016, the MBTA filed its answer and counterclaims against Rail World. D. 17. Rail World has now moved to dismiss the MBTA's counterclaims. D. 26. The Court heard the parties on the pending motion and took this matter under advisement. D. 39.

## V. Discussion

### A. The Court Considers the Purchase and Sale Agreements for Purposes of Deciding This Motion to Dismiss

"Ordinarily, a court will not consider documents outside of the pleadings in a motion to dismiss." Facey v. Dickhaut, 892 F. Supp. 2d 347, 351 (D. Mass. 2012) (citations omitted). Nevertheless, "the First Circuit makes a 'narrow exception for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); see Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). This is so even when a party fails to include a pertinent document as part of its pleadings; instead, the opposing party "may introduce the exhibit as part of his motion attacking the pleading." Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).

In a footnote, the MBTA asserts that it "lacks knowledge or information sufficient to form a belief as to the truth of Rail World's assertions" with respect to the April 22, 2015 and August 25, 2015 purchase and sale agreements attached to its motion to dismiss. D. 28 at 4 n.2; see D. 26-2; D. 26-3. This bare assertion, without more, is not sufficient to challenge the authenticity of these documents. The MBTA provides no reason to doubt the authenticity of the agreements, particularly since the MBTA does not contend that the documents were in fact inaccurate or

4

inauthentic.  Cf. Oliverio v. Allied Steel Buildings, Inc., No. 15-cv-13562-DJC, 2016 WL 1369331, at *3 (D. Mass. Apr. 6, 2016) (declining to examine purported contract because the plaintiff argued it was inauthentic, invalid, inaccurate and that he never bargained for or agreed to the terms listed within it and otherwise based his complaint upon a separate agreement with different terms); Bagg v. HighBeam Research, Inc., 862 F. Supp. 2d 41, 44-45 (D. Mass. 2012) (deciding not to rely upon a 2006 forum selection clause in the contract for a motion to dismiss because the plaintiffs explained there was no guarantee that the 2006 contract was identical to the contracts agreed to between the parties from 2007 to 2010).  Here, the MBTA has relied upon the assignment agreement between Rail World and RTSC in framing its own allegations within the counterclaim.  See, e.g., D. 17 at 11-12, 14 ¶¶ 20-22, 27, 41.  Considering that the two agreements are dated and signed by both Rail World and RTSC and the limits of the MBTA's challenge, the Court has considered these documents in resolving the motion to dismiss the MBTA's counterclaims.

> B. **The Court Dismisses the MBTA's Separate Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)**

Rail World moves to dismiss Count III, the MBTA's counterclaim for breach of the implied covenant of good faith and fair dealing.  D. 26 at 8-9.  Under Illinois law, the duty of good faith and fair dealing is predicated on the existence of a contract.[1]  Mid-W. Energy Consultants, Inc. v. Covenant Home, Inc., 352 Ill. App. 3d 160, 163 (2004).  "To establish a breach of the implied duty of good faith and fair dealing, a party must show 'that the contract vested the opposing party with

---

[1] In deciding this motion, the Court applies Illinois law in accordance with the choice of law provision provided in the Lease Agreement.  See D. 26-1 at 10; see also D. 26-2 at 7.  The parties do not dispute that Illinois law applies as to the state law claims.  See D. 26; D. 28.

5

discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties.'" Ronald McDonald House Charities of Chicagoland v. Winning Charities Ill., LLC, No. 13-cv-1430, 2013 WL 5907668, at *5 (N.D. Ill. Nov. 4, 2013) (internal citation omitted). In essence, the purpose of such an implied covenant is "to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." RBS Citizens, National Ass'n v. RTG-Oak Lawn, LLC, 407 Ill. App. 3d 183, 191 (2011) (citing Cramer v. Insurance Exchange Agency, 174 Ill.2d 513, 523-24 (1996)).

Rail World urges the Court to dismiss the MBTA's claim for breach of good faith and fair dealing in Count III because it cannot stand as an independent cause of action. D. 26 at 8-9. "Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing." LaSalle Bank Nat'l Assoc. v. Paramount Props., 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008) (citations omitted); see LaScola v. U.S. Sprint Commc'ns, 946 F.2d 559, 565 (7th Cir. 1991). Instead, the covenant merely guides the construction of the express terms in the agreement. Baxter Healthcare Corp. v. O.R. Concepts, Inc., 69 F.3d 785, 792 (7th Cir. 1995); LaSalle Bank, 588 F. Supp. 2d at 857-58. As such, the Court must grant Rail World's motion to dismiss as to Count III. The theory for recovery under the implied covenant of good faith and fair dealing claim alleged by the MBTA, see D. 28 at 13-15, instead will be considered as one basis for the breach of contract claim alleged in Count II. See LaSalle Bank, 588 F. Supp. 2d at 853 (dismissing the independent implied covenant claim and analyzing the theory for the breach of the implied covenant as part of the breach of contract claim); Playboy Enters. Int'l, Inc. v. Smartitan (Sing.) Pte Ltd., No. 10-cv-4811, 2011 WL 3839711, at *2-3 (N.D. Ill. Aug. 26, 2011) (explaining

6

that "a claim for breach of the implied covenant of good faith and fair dealing can be subsumed within a breach of contract claim").

For the foregoing reasons, the Court ALLOWS the dismissal of Count III.

### C. The Court Declines to Dismiss the MBTA's Counterclaims for Equitable Relief (Counts IV, V and VII)

The MBTA also brings three claims for equitable relief in its counterclaims: a claim for unjust enrichment (Count IV), a claim for quantum meruit (Count V) and a claim for promissory estoppel (Count VII). Rail World moves to dismiss all three claims on the basis that an express contract governs the obligations and duties between the parties. D. 26 at 9-12.

Unjust enrichment, quantum meruit and promissory estoppel all constitute claims in equity. See Cohen v. Am. Sec. Ins. Co., 735 F.3d 601, 615 (7th Cir. 2013); Dugas-Filippi v. JP Morgan Chase & Co., 971 F. Supp. 2d 802, 803 (N.D. Ill. 2013) (citing Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 233 Ill. 2d 46, 53, 58 (2009)); Song v. PIL, L.L.C., 640 F. Supp. 2d 1011, 1015-17 (N.D. Ill. 2009). Because each of the three claims provides an equitable remedy, each claim is only available when there is no adequate remedy at law. Cohen, 735 F.3d at 615. That is, each of the three claims is unavailable where the conduct at issue is the subject of an express contract between the parties which may provide an adequate remedy at law. Id. Indeed, a party "may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties" because "'[q]uasi-contract is not a means for shifting a risk one has assumed under a contract.'" Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003) (internal citations omitted).

As a basis for each of the three counts, the MBTA reasserts its allegations that it had a lease with Rail World, D. 17 at 10 ¶¶ 9-13, that the terms of the Lease mandated that the MTBA provide a monetary deposit that was to be credited to its account at the end of the lease's term, id. at 11 ¶

7

17, and that the MBTA did not receive the credit it was due, id. at 11-12 ¶¶ 23-24, 26. See id. at 14-15 ¶¶ 48, 54, 64. For instance, when alleging its claim for unjust enrichment, the MBTA "realleges and incorporates each of the allegations set forth" earlier in the counterclaims, including that it entered into the Lease Agreement with Rail World, that Section 7 of the Lease obligated MBTA to pay a security deposit of $204,750 to Rail World which was to be credited at the end of the Lease, that Rail World assigned its obligations under the Lease to a third party and that Rail World retained that deposit without returning it to the MBTA even though it did not assign the obligation to credit the deposit to the third party. Id. at 10-12, 14 ¶¶ 9, 17, 20-27, 48. The same is true for its other equitable claims. Id. at 15-16 ¶¶ 54, 64. As a result, Rail World argues that the MBTA relies upon the Lease Agreement and the obligations stemming from that agreement to lodge its equitable claims and thus has not adequately alleged a breach that warrants equitable relief. D. 26 at 9-10.

As the MBTA asserts, D. 28 at 16, 18-19, Fed. R. Civ. P. 8(d)(2) allows parties to plead claims in the alternative. Likewise, Illinois law allows a plaintiff to plead claims for breach of contract and equitable claims in the alternative. See Guinn v. Hoskins Chevrolet, 361 Ill. App. 3d 575, 604 (2005). Although perhaps imperfectly pled, see id., the MBTA acknowledges that its counterclaims are in the alternative. D. 28 at 16, 18-19. Given this representation in conjunction with applicable state law, the Court will allow these counterclaims to go forward.

Rail World additionally asserts that the unjust enrichment claim cannot stand as an independent cause of action under Illinois law. D. 26 at 9. Illinois courts consider theories of unjust enrichment and quantum meruit "generally synonymous causes of action," Oncology Therapeutics Network Joint Venture, L.P. v. Olympia Fields Internal Med. Assocs., S.C. (Inc.), No. 01-cv-2079, 2003 WL 21087954, at *4–5 (N.D. Ill. May 13, 2003), amended, 2003 WL

8

22706845 (N.D. Ill. Nov. 14, 2003) (citation omitted), where "Illinois employs an almost identical standard to test whether a plaintiff states a cause of action" for the two, Johnson v. Gudmundsson, 35 F.3d 1104, 1114 (7th Cir. 1994). Although there is lack of clarity among the lower courts in Illinois as to whether unjust enrichment can lie as an independent cause of action when unconnected from some underlying claim, the Illinois Supreme Court has previously recognized unjust enrichment as an independent cause of action. See Cleary v. Philip Morris Inc., 656 F.3d 511, 516 (7th Cir. 2011) (citing Raintree Homes, Inc. v. Vill. of Long Grove, 209 Ill. 2d 2487, 257 (2004); Indep. Voters v. Ill. Commerce Comm'n, 117 Ill. 2d 90, 109 (1987)); GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc., No. 13-cv-4346, 2016 WL 5720384, at *10 (N.D. Ill. Sept. 30, 2016). For this reason, the Court does not grant dismissal of the unjust enrichment counterclaim based upon this argument.

For all of these reasons, the Court DENIES the motion to dismiss Counts IV, V and VII.

### D. The Court Denies Rail World's Motion to Dismiss the MBTA's Breach of Contract Counterclaim (Count II)

#### 1. The MBTA Has Adequately Pled that Rail World Is Liable for Breach of Section 7 of the Lease Agreement

Rail World also argues that the MBTA's breach of contract claim cannot survive. It asserts that the basis for the MBTA's breach of contract counterclaim is founded upon the incorrect premise that Rail World is obligated to credit, refund or pay the $204,750 deposit to the MBTA. D. 26 at 5-8.

To allege a colorable breach of contract claim under Illinois law, a plaintiff must assert: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." W.W. Vincent & Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 967 (Ill. App. 2004). The Court must "construe contracts by giving

their unambiguous terms clear and ordinary meaning in an effort to determine the parties' intent." Reger Dev., LLC v. Nat'l City Bank, 592 F.3d 759, 764 (7th Cir. 2010), as amended (Dec. 16, 2010) (internal citations omitted).

First, the MBTA has alleged the existence of a written lease between the parties as well as the terms of that lease and Rail World does not dispute the same. That is, the parties agree that the Lease provided that "[t]hree month's advance deposit for seven (7) [l]ocomotives in the amount of [$204,750] is due to secure the [l]ocomotives." D. 26-1 at 3. That provision further provides that "[t]he deposit will be held and credited at the end of the lease or any lease extension." Id. In addition, the counterclaim alleges—and Rail World has raised no contention—that the MBTA paid this deposit at the start of the Lease. D. 17 at 11 ¶ 18. Instead, the dispute between the parties arises as to whether Rail World remains liable for the MBTA never receiving a credit or refund for the previously submitted deposit.

Here, Rail World first contends that the MBTA has not adequately pled that Rail World breached the Lease as Rail World was not obligated to credit the MBTA at the end of the Lease because it assigned the Lease Agreement to RTSC. D. 26 at 5-6. As alleged and as shown in the purchase and sale agreements, Rail World assigned the lease to RTSC. D. 17 at 11 ¶ 20. The purchase and sale agreements provide that, RTSC "fully assumes and becomes liable for, and [Rail World] is hereby released from and ceases to have any responsibility for any and all liabilities relating to or connected with the [locomotives] arising after the Closing Date" provided that Rail World "agrees to indemnify, defend and save harmless [RTSC] . . . from and against any and all costs, expenses, losses, taxes, penalties, damages, claims actions or other liabilities . . . relating to . . . (i) any breach by [Rail World] of any of its agreements, representations, warranties or

covenants contained in this Agreement or any agreements collateral thereto." D. 26-2 at 4; D. 26-3 at 5.

In response, the MBTA first argues that Rail World did not expressly assign RTSC with the specific obligation to credit or pay the $204,750 deposit to the MBTA such that Rail World cannot argue that it is free from liability. D. 28 at 9-11, 11 n.4. Under Illinois law, "[a]n assignee does not become liable on an executory contract of the assignor unless by his contract he assumes such liability." Quest v. Robertson, 71 Ill. App. 3d 678, 681 (1979). That is, "an assignee's acceptance of an assignment of a contract, without any express assumption of the obligation of the contract, does not bind the assignee merely because the contract provided that it was binding upon the assigns of the respective parties." Id. Under Illinois law, this is considered a "naked assignment." Id. Conversely, "an assignment which is not 'naked'—*i.e.*, one by which the assignee accepts obligations to perform duties under the contract"—may expose an assignee to liability under the contract. Pelz v. Streator Nat. Bank, 145 Ill. App. 3d 946, 952 (1986). In this case, the assignments to RTSC were not naked. That is, RTSC expressly undertook the obligations due under the Lease Agreement when RTSC "fully assume[d] and [became] liable for . . . any responsibility for any and all liabilities relating to or connected with the [locomotives] arising after the Closing Date." D. 26-2 at 4; D. 26-3 at 5. Unlike Quest v. Robertson, where neither of the pertinent documents contained any express language to indicate that assignees were assuming the underlying obligations, Quest, 71 Ill. App. 3d at 680-81, the language here provides that RTSC assumes all arising liabilities, D. 26-2 at 4; D. 26-3 at 5. Thus, as Rail World asserts, there may have been no need to single out or specify the obligation as to the advance deposit because Rail World assigned all of its liabilities to RTSC. D. 34-1 at 4.

11

The MBTA next asserts that Rail World's contention it is entitled to dismissal pursuant to the assignment to RTSC when the MBTA was not a party to and had no involvement in the assignment is untenable. D. 28 at 9. Even if a party is free to assign its rights and responsibilities under a contract, "the effect of that assignment would ordinarily make both parties [the assignor and the assignee] liable on the contracts." Grabianski v. Bally Total Fitness Holding Corp., 891 F. Supp. 2d 1036, 1044 n.4 (N.D. Ill. 2012); see Prime Northgate Plaza Ltd. P'ship v. Lifecare Acquisitions Corp., 985 F. Supp. 815, 817-18 (N.D. Ill. 1997); Gen. Elec. Railcar Leasing Servs. Corp. v. Carlson Mktg. Grp., Inc., No. 91 C 5345, 1992 WL 14175 (N.D. Ill. Jan. 16, 1992). Applying this rule here, even accepting that Rail World assigned the entirety of the obligations under the Lease to RTSC, this does not eliminate all of Rail World's potential liability. Thus, even though Rail World argues that it cannot be liable to the MBTA because it was no longer the lessor of the locomotives at the end of the Lease and it had assigned that right to RTSC, D. 26 at 6-8, the fact that there was a valid assignment does not absolve Rail World from all potential liability arising from a breach of the contract.

> 2. *The MBTA Has Sufficiently Pled That Rail World Breached Section 14 of the Lease Agreement*

In its counterclaim, the MBTA asserts a breach of contract cause of action for Rail World's failure to adhere to Section 14 of the Lease Agreement. D. 17 at 11, 14 ¶¶ 19, 22, 41. Section 14 of the Lease Agreement states that "the Lessor shall provide or cause to be provided to Lessee written notification ten (10) days prior to any such assignment." Id. at 11 ¶ 19; D. 26-1 at 7. In its counterclaim, the MBTA alleges that Rail World failed to provide the MBTA with written notification ten or more days prior to assigning the Lease Agreement to RTSC via the purchase and sale of the leased locomotives. D. 17 at 11 ¶ 22. Although Rail World moves to dismiss the entirety of the MBTA's breach of contract count, D. 26 at 5-8, Rail World makes no argument as

12

to the insufficiency of this claim, D. 26; D. 34-1. Instead, Rail World's motion to dismiss appears to support the MBTA's factual assertions: Rail World states that it entered into a purchase and sale agreement with RTSC in which RTSC owned all of the locomotives subject to the Lease Agreement with the MBTA by August 25, 2015, D. 26 at 3 (citing attached exhibits), but that it was not until September 18, 2015 that Rail World and RTSC jointly notified MBTA of the assignment. Id.

     3. *The MBTA Has Adequately Pled that Rail World Breached the Implied Covenant of Good Faith and Fair Dealing*

As explained above, pursuant to Illinois law, the Court considers the MBTA's claim for breach of the implied covenant of good faith and fair dealing as one basis for its breach of contract claim. See LaSalle Bank, 588 F. Supp. 2d at 853; Playboy Enters., 2011 WL 3839711, at *2-3.

"An obligation to deal in good faith is implied in all Illinois contracts." LaScola, 946 F.2d at 565. The duty of good faith and fair dealing imposes a limit on the exercise of discretion by requiring a party vested with such discretion to exercise it in a reasonable manner consistent with the parties' reasonable expectations. LaSalle Bank, 588 F. Supp. 2d at 857; Fox, 313 Ill. App. 3d at 42-43.

As stated in its counterclaim, the MBTA contends that Rail World breached the implied covenant by failing to credit, refund or pay the deposit back to the MBTA after providing the reasonable expectation that it would do so. D. 17 at 14 ¶¶ 43-47. These allegations state a plausible, alternative basis for the breach of contract claim premised on a breach of the implied covenant of good faith and fair dealing.

For all of the foregoing reasons, the Court DENIES the motion to dismiss Count II.

### E. **The Court Denies Dismissal as to the MBTA's Declaratory Judgment Counterclaim (Count I)**

As to the declaratory judgment counterclaim brought by the MBTA, Rail World claims it has no liability to the MBTA because it was no longer the lessor at the end of the Lease's term. See D. 26 at 7 n.7. As explained above, however, Rail World has not shown that, as a matter of law, it is not liable to the MBTA due to the assignment. Because Rail World uses this same line of reasoning to advance its argument for dismissal of the declaratory judgment counterclaim, the Court DENIES Rail World's motion as to this claim.

### F. The Court Dismisses the MBTA's Conversion Counterclaim (Count VI)

Rail World asserts that the MBTA's conversion counterclaim must be dismissed. D. 26 at 7 n.7. To plead a claim for conversion in Illinois, a plaintiff must demonstrate that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." Cirrincione v. Johnson, 184 Ill. 2d 109, 114 (1998) (citing W. States Ins. Co. v. Louis E. Olivero & Assoc., 283 Ill.App.3d 307, 310 (1996)).

Rail World argues for dismissal upon the basis that the advanced deposit under the Lease was not a specified *res* but instead a sum of money that was required to be credited toward rent at the Lease's end; Rail World asserts that this renders the MBTA's allegations deficient for pleading a conversion claim. D. 28 at 7 n.7. "Under Illinois law, the subject of a conversion claim must be an identifiable object of property." Song, 640 F. Supp. 2d at 1017. Money or funds can qualify as an identifiable item of property if said money is "capable of being described as a specific chattel" and if "the money claimed belonged to [the counterclaimant] at all times and that [the counterclaim defendant] converted the money to its own use." Id. (citations omitted). The money does not need to be specifically earmarked to qualify but cannot be an indeterminate sum, Roderick

Dev. Inv. Co. v. Cmty. Bank of Edgewater, 282 Ill. App. 3d 1052, 1058–59 (1996), or some kind of general debt or obligation, Nat'l Acc. Ins. Underwriters, Inc. v. Citibank, F.S.B., 533 F. Supp. 2d 784, 787 (N.D. Ill. 2007).

Here, the MBTA identifies a specified sum of money that is capable of being connected to something tangible (the advance deposit in the amount of $204,750 provided at the start of the Lease); however, the MBTA fails to allege facts that "the money claimed belonged to the [counterclaimant] at all times," Song, 640 F. Supp. 2d. at 1017, because here the allegations assert that the sum was once in Rail World's lawful possession. D. 17 at 16 ¶¶ 60-63. Moreover, "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money," In re Thebus, 108 Ill. 2d at 260; VW Credit, Inc. v. Friedman & Wexler, LLC, No. 09-cv-2832, 2010 WL 2330364, at *3 (N.D. Ill. June 7, 2010), and the MBTA has not explained how the allegations amount to more than such obligation. In sum, the allegations amount to the MBTA asserting that it is owed $204,750, which was once lawfully in the possession of Rail World but is now due back to the MBTA under the terms of the Lease Agreement. D. 17 at 16 ¶¶ 60-63. At base, this is a "breach of contract claim improperly dressed as a conversion claim." Song, 640 F. Supp. 2d at 1017. The Court thus dismisses the MBTA's conversion counterclaim.

## VI. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Rail World's motion to dismiss the MBTA's counterclaims, D. 26. Accordingly, the counterclaims for breach of the implied covenant of good faith and fair dealing (Count III) and conversion (Count VI) are dismissed, but the other counterclaims may proceed.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

15